ARCHITECTOR COMPANY, INC., Plaintiff, *v.* IRA L. SLOMON et al., Copartners Doing Business as SLOMONS LABORATORIES, Defendants.

Supreme Court, Trial Term, New York County, May 13, 1948.

*Henry Amster* and *Milton Lipson* for plaintiff.

*J. Milton Fainer* for defendants.

WALTER, J.   Plaintiff sues for damages for alleged breach of warranty that an adhesive purchased by its predecessors from defendants was fit for a specified purpose and would perform certain functions.

In 1944, 1945, and until February 28, 1946, certain individuals, as partners, carried on under the name Architector Company the business of selling so called Architector model building sets which, briefly, were an advance upon and an improvement of the children's building blocks of earlier generations, and consisted of a quantity of miniature bricks, small pieces of wood for window and door frames, flooring, roofing, etc., a tiny bag of cement, and a small jar of adhesive.   The double idea of the set was that by use of the adhesive between the bricks a child (or an adult so minded) could make a toy house or other similar structures of reasonable permanency and yet could demolish the structure by the simple expedient of removing the adhesive from the bricks by soaking them in water and then reusing the materials in rebuilding from time to time.   The sets undoubtedly had a play value for children and a hobby value for grownups interested in architecture or building.

In the period from June 21 to December 31, 1944, when adhesives other than the defendants' were used, net sales of $35,441.27 with a resulting net profit of $9,449.26 were obtained.

Early in 1945, the partners began the use of defendants' adhesive, a small jar of it being packed in each set, and such use was continued during the entire year 1945.   The total quantity purchased from defendants was (   ) jars and the price paid therefor was $2,643.92.   The sets were sold throughout the United States, mostly, if not entirely, to department and

toy stores which, in turn, retailed them to the users thereof.

Before any of defendants' adhesive was purchased for use in those Architector sets, the partners aforesaid made known to the defendants the particular purpose for which the adhesive was required, and also the fact that many months generally, if not necessarily, would elapse between the packing of a set and the first actual use thereof by the ultimate purchaser, and that it, hence, was essential that the adhesive retain during all that time the consistency requisite for easy application, and also the fact that comparative ease in such purchaser's demolishing and rebuilding was another prime object and requisite. Defendants thus knew that two essential requisites were that its adhesive should remain usable for many months after being packed in a set and should be capable of being removed from the bricks by soaking the bricks in water. Defendants knew, also, that plaintiff's predecessors (the partners above mentioned) relied on their skill and judgment in supplying an adhesive that possessed those requisites and was reasonably fit for the purpose which had been so disclosed to them.

Defendants thus impliedly warranted that the adhesive they furnished would be reasonably fit for that purpose (Personal Property Law, § 96).

Beginning about October, 1945, numerous purchasers of these Architector sets complained that when they received them the adhesive contained therein already had become so hard and gummy as not to be usable and could not be restored to the consistency requisite for easy application by the addition of water thereto. There were also some complaints that where the adhesive had been used in erecting a model house, such model could not be demolished and the materials made available for rebuilding. Examination of a large number of sets established that such complaints were well-founded. I thus find that defendants' warranty was broken.

On February 28, 1946, the partners then doing business as Architector Company (the ones or the successors of the ones to whom the defendants sold the adhesive and made the broken warranty) transferred to plaintiff the assets and business of the partnership, and plaintiff thereafter continued the business of making and selling such Architector model building sets.

Plaintiff thus became vested with any cause of action arising from the breach of that warranty, and the remaining question is what damage plaintiff has established.

The measure of damages is the loss directly and naturally resulting in the ordinary course of events from the breach of

warranty; and in the absence of special circumstances showing proximate damage of a greater amount, such loss is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty (Personal Property Law, § 150).

As defendants knew when they sold the adhesive that it was so to be supplied as part of such building sets for use as a part thereof in the manner stated, and knew that the sets were to be sold to jobbers and retailers who were to resell them to persons who desired to and were led to believe that they could use them in such manner, it seems to me plain that defendants must be deemed to have contemplated that if they broke their warranty by furnishing an adhesive which did not remain usable for the length of time required and was not readily removable so that purchasers of the sets could re-use the materials therein, the partners who purchased adhesive would be unable to develop and extend the magnitude of their business, and, on the contrary, would lose profits which they would earn if the sets they sold gave the satisfaction they would have given if accompanied by a proper adhesive.

I thus think it plain that there are here special circumstances which make it improper to hold plaintiff to damages measured by the difference between the value of the adhesive at the time of the delivery thereof to the partners and the value it would have had if it had conformed to the warranty, and make it proper to award plaintiff such loss as it has proved has resulted directly and naturally in the ordinary course of events as a result of the breach of warranty.

I do not think it accurate to speak of the adoption of that measure of damages, instead of measuring the damages by such difference, as the award of special damages; for I think the term special damages means damages which are something in addition to or at least apart from the loss resulting directly and naturally in the ordinary course of events as a result of the wrong for which the damages are to be awarded. Special circumstances justifying the award of special damage and special circumstances justifying a resort to the test of actual loss under subdivision 7 of section 150 of the Personal Property Law are not one and the same thing and to fail to distinguish between them can lead only to confusion. But even if resorting to the test of actual loss as the proper measure of damage be in truth an award of special damage, I still think that the circumstances here are sufficient to justify it.

The statement in *Armstrong Rubber Co.* v. *Griffith* (43 F. 2d 689, 690) that " knowledge that the goods are to be resold and, if defective, will be the occasion of a loss of profits is not enough to justify an award of special damages " was made in connection with a claim for damages on a sale of goods which the buyer could get in the open market and has no application, I think, to a case of this kind. (See *Delafield* v. *Armsby Co.*, 131 App. Div. 572, affd. on opinion below 199 N. Y. 518; *Czarnikow-Rionda Co.* v. *Federal Sugar Refining Co.*, 255 N. Y. 33.)

When plaintiff's predecessors learned that the adhesive was defective, they did the best they could to remedy the situation and avoid further loss by repacking with ‚fresh adhesive a large number of sets on hand and still in stores and by offering to supply fresh adhesive to such purchasers of sets as would accept it. They thus fully complied with the rule that one subjected to injury from breach of contract must use reasonable exertions to render the injury as light as possible (*Hamilton* v. *McPherson*, 28 N. Y. 72). That rule does not require more than is reasonable under the circumstances, and I do not think it can be stretched to the point of saying that plaintiff's predecessors were required immediately to cease the use of defendants' adhesive, call in all sets in which any of it was packed, and go out and try to find another adhesive to use in the place of the defendants'.

In so repacking the existing sets with fresh adhesive in an effort to minimize the damage as much as possible, there was incurred an expense of perhaps as much as a thousand dollars, and while that is an item to be taken into account in fixing the amount of the loss, it is by no means the full measure of the loss.

Long-established stores of great magnitude purchased these sets in 1945, and to my mind the inference is well-nigh irresistible that they would have reordered in the next year and perhaps for many years to come if the sets had been as represented. They in fact did not reorder, and no reason for that other than the defective adhesive has been suggested.

It thus is a fair inference fully warranted by the evidence that but for the breach of warranty, the period from January 1, 1946, to January 31, 1947, would have been at least as profitable as the year 1945, and thus would have shown a profit of $5,000 instead of a loss of $12,893.82.

The fact that in the very nature of things plaintiffs could not and of course did not demonstrate with absolute certainty and mathematical accuracy what would have happened if the adhesive had been as warranted does not justify depriving it of damages. In such cases reasonable conjectures and probable estimates must be resorted to and the trier of the facts (in this case myself) must make the best approximation possible through the exercise of good sense and judgment (*Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205, 209–210; *MacGregor* v. *Watts,* 254 App. Div. 904; *Acunto* v. *Schmidt-Dauber Co., Inc.,* 207 App. Div. 411; *Nathan* v. *King Features Syndicate, Inc.,* 32 N. Y. S. 2d 519, affd. 265 App. Div. 843).

One of the most outstanding jurists of our time has said that in such cases we often make the best estimate we can, even though it is really no more than a guess (*Sheldon* v. *Metro-Goldwyn Pictures Corp.,* 106 F. 2d 45, 51, per HAND, J.). See, also, *Pieczonka* v. *Pullman Co.* (102 F. 2d 432, 434) where a court including that same jurist said that in actions for causing death we accept a jury's powers of divination even though the result be no better than a guess.

I balk at those extreme statements. Maybe, however, that is not because I really am more orthodoxly conservative but merely because I am less frank in admitting that what I think are my logical processes are in reality mere guesses. In any event, I shall continue to endeavor to do what I tell juries they must do: avoid guesses, eliminate all damages that are merely surmises or conjectures, but draw such logical inferences as have a reasonable basis in the evidence. In an effort to follow that rule, I do not go beyond the period ending January 31, 1947, not only because that is where the direct and tangible evidence ends but also because I feel that by that time other factors certainly would begin to operate.

I thus fix $18,000 as the amount of the plaintiff's recoverable loss and direct judgment in its favor for that sum with interest from February 1, 1947, and costs.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.