**DISTRICT OF COLUMBIA**, a municipal corporation, Plaintiff,

v.

All of **LOT 813 IN SQUARE 568**, containing 2,280.0 square feet, etc., et al., **Lee G. Rubenstein, et al.,**

and

**Unknown Owners, Defendants.**

No. 42–63.

United States District Court District of Columbia.

July 21, 1964.

Chester H. Gray, Corp. Counsel, and John A. Earnest and Robert D. Wise, Asst. Corp. Counsels, for plaintiff.

John J. Sexton, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for defendants.

YOUNGDAHL, District Judge.

Defendants' motion for a new trial came on to be heard before this Court on June 1, 1964. Upon the arguments of counsel and the memoranda submitted in support thereof, the Court has concluded that the motion should be denied.

■ This is a condemnation case in which the jury awarded defendants $412,457.50 as just compensation for a parcel of land condemned by the District of Columbia for use as part of the anticipated inner loop freeway, a major highway which will encircle the inner portion of Washington, D. C. The sole issue was just compensation for the land taken. The land was vacant at the time of the declaration of taking. Defendants had themselves demolished all existing structures, and had also begun excavations for a combination apartment house-office building which they planned to erect on the land. The Court instructed the jury that the cost of such demolition and excavation, amounting to $12,000, should be added to the jury's determination of the property's fair market value, since such changes in the land were similar to permanent improvements which a willing purchaser would take into account in deciding how much he would pay to a willing seller. With this figure included in the valuations of the expert appraisers, the various total estimates of fair market value on the date of taking were as follows: for the District of Columbia, two appraisers agreed that the fair market value was $374,600; for defendants, one appraiser said the fair market value was $459,250; another said the fair market value was $543,900. The Court observed that this jury was a particularly attentive jury, paying close attention to the entire trial. The jury had a full transcript of the evidence to assist its deliberations. Its award is an eminently fair one. This conclusion is supported by the fact that after its deliberations had begun, the jury, in the presence of the marshal, requested and made a careful second view of the property. The jury verdict should therefore not be set aside unless there was some error of law which might have materially affected the verdict. The Court has concluded that there was none.

1. Defendants contend that the Court erred in refusing to charge the jury that the fact and cost and value of certain architectural plans, building permits and financial arrangements which defendants had obtained for their proposed new structure could be taken into account by the jury as bearing upon the fair market value of the land.

The Court instructed the Jury as follows:

" * * * [J]ust compensation includes all elements of value that inhere in the property, although it does not exceed market value fairly determined. The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but rather is to be arrived at upon just consideration of all the uses for which it is suitable.

"If the whole or any part of said land is peculiarly adapted by its location, surroundings, natural advantages, or intrinsic character, to some particular use or uses which give it a higher market value than it would otherwise have, the circumstance or circumstances which make up such peculiar adaptability for such particular use or uses shall be considered, and the amount awarded as compensation for the land should be based upon its present fair market value in view of the most valuable use or uses for which it is shown to be adapted.

"However, the jury should not attempt to appraise the value of the property by its adaptability or availability for remote or conjectural future uses. The adaptability has to be one which is reasonably likely in the near future, and the speculative value of the land for remote prospective uses cannot be considered by you.

"The owners are entitled to just compensation for the value of their land for the reasonably highest and best use of that land, but such high-est and best use is considered to the full extent that the prospect of demand for such use affects the market value while the property is privately held. The element of higher use can only be considered in terms of the extent to which the possible higher use would have affected the price which a willing buyer would have offered for the property just prior to the taking. Therefore, in considering highest and best use you should consider not only uses theoretically possible under the zoning regulations, but also all facts bearing on whether or not a particular use was practical and feasible as of [the date of taking].

"In other words, in considering the available uses to which the property might be adapted or devoted, or the highest and best use, the question is what an ordinary prudent purchaser would do, not what the landowners claim they would do. The fair market value is thus to be determined for the property as it was on the date of taking, and not as though already devoted or adapted to any prospective higher or better use. Such prospective higher or better use is relevant only to the extent that it would reasonably be considered by a prudent purchaser on the date of taking.

"There have been received into evidence in this case certain architectural plans, and certain testimony about financial arrangements and building permits. The Court admitted these items of evidence solely to assist you in deciding the question of what was the highest and best use of this property on the date of taking as it would appear to an ordinary prudent purchaser.

"To the extent that the existence of such plans, financial arrangements, and permits would affect the price which such purchaser would be willing to pay for the property in question, in view of an anticipated higher use of the property, you may

consider them as bearing upon the fair market value.

"However, you may not consider in any way the cost of such financial arrangements or architectural plans or building permits to the present owners, and the owners are not entitled to compensation for any losses due to expenditures made for a business venture which was frustrated by the condemnation proceeding.

"It is not proper for you to consider what the value of the land would be if this or that improvement were placed upon it; nor can you consider the intention of the owners to make improvements, because fair market value must be established as the land would appear to an ordinary prudent purchaser on the date of taking."

■ There was an important difference in the opinions of the experts as to the highest and best use of the land taken. The experts for the District of Columbia believed such use was as a site for an apartment house; the experts for the property owners believed such use was as a site for an apartment house with some office space in addition. In order to support defendants' contentions as to the highest and best use of the land in the reasonably near future (and therefore the fair market value to a prospective purchaser), defendants were permitted to introduce testimony as to the existence of the financial arrangements, building permits, and architectural plans, but testimony as to the cost of these development activities was excluded because these arrangements, permits, and plans were not part of the property taken by the District of Columbia and were therefore a noncompensable, consequential loss to the property owners. This ruling and the above-quoted instruction to the jury follow the appropriate case law. United States v. Grand River Dam Authority, 363 U.S. 229, 236, 80 S.Ct. 1134, 4 L.Ed. 2d 1186 (1960); Mitchell, et al v. United States, 267 U.S. 341, 344, 45 S.Ct. 293, 69 L.Ed. 644 (1925); Omnia Commercial Co. v. United States, 261 U.S. 502, 513, 43 S.Ct. 437, 67 L.Ed. 773 (1923); Bothwell, et al v. United States, 254 U.S. 231, 41 S.Ct. 74, 65 L.Ed. 238 (1920); United States v. 25.406 Acres of Land, 172 F.2d 990, 992 (4th Cir. 1949) (evidence of the existence of plans, financial arrangements, construction contracts admitted to show that projected highest and best use was not for "a vague hypothetical project" but was rather "a project which * * * was definitely in the process of achievement"); Ellis v. Ohio Turnpike Comm'n, 124 N.E.2d 424 (Ct.App.Ohio 1955), appeal dismissed and cert. denied, 352 U.S. 806, 77 S.Ct. 51, 1 L.Ed.2d 39 (1956); Brighton Plaza, Inc. v. State, 32 Misc.2d 266, 224 N.Y.S.2d 411 (1961). But see In Re Site for City-Aided Low-Rent Housing Project, 197 Misc. 70, 89 N.Y.S.2d 855, 858 (Sup.Ct. Bronx County 1949).

■ 2. Defendants contend that the Court erred in refusing to allow one of defendants' expert witnesses to give his opinion of the fair market value of the property, taking into account the "special" factors of the existence of the financial arrangements, building permits, and architectural plans. However, when the witness Donohoe gave his estimate of the fair market value (Tr. 228), he based it upon the factors which he himself had previously mentioned, which included a discussion of the highest and best use of the property as an apartment house with some office space. (Tr. 225–227.) These factors were clearly implied in the question put to the witness by defendants' counsel when he listed "knowledge of the area" and "permissible uses of the property under the applicable zoning regulations" as factors the witness was to consider, among others. (Tr. 227.) When counsel later attempted to ask the witness whether his estimate of value would be different if he considered "other factors which were not included" in the earlier question (Tr. 248), the witness stated clearly that these "other factors" of excavation, financing, and planning were related to highest and best use of the land

(Tr. 249) and had no value in themselves apart from the land (Tr. 250).[1] Under questioning from the Court, the witness said that it was correct to say that he had previously given a valuation "based upon comparable sales, plus highest and best use to which this property could be put." (Tr. 254.) And later the witness told the Court that he had considered "all the other factors involved in highest and best use" "as generally referred to" (Tr. 257) when he gave his valuation. It was therefore proper for the Court to sustain the objection of the District of Columbia to a second and higher valuation from the expert witness considering certain "additional" factors which the Court believes were and should have been fully considered in reaching the first valuation. It would have confused the jury if the Court had permitted a second valuation.

■ 3. Defendants contend that the Court erred in excluding evidence of certain sales which defendants' second expert wanted to use to "check" his "judgment" on valuation. (Tr. 330.) The sales were in the area of 12th and M Streets, N. W.—approximately nine blocks north and eight blocks west of the condemned property, which was at 3rd and E Streets, N. W. There was thus a factor of remoteness in distance which the Court was required to consider, since substantial differences in comparability can exist within the comparatively large distance (in dense urban areas) encompassed by these city blocks. Therefore, when the witness told the Court that he thought his valuation would have been the same even without relying upon these particular sales (Tr. 330), and when it appeared to the Court that the witness had amply supported his valuation with other, nearer sales, it was properly with-

in the Court's discretion to exclude the proffered sales. Indeed, the Court had permitted the previous expert for defendants to testify to sales in the same area and in one area even more remote in distance after that expert had given the Court concrete reasons for consulting sales in such areas, particularly comparability of the size of the lots involved. By contrast, the second appraiser did not have to consult sales in the remote area, and there was thus no countervailing need for the testimony which might have overcome the factor of remoteness in distance. The admissibility of evidence of the kind at issue here requires some balancing by the Court when there is a factor of remoteness of distance. The Court in this case merely ruled that the factor of such remoteness was overcome in the instance of the first appraiser by other important factors supporting admissibility, while the factor of remoteness in distance was not overcome by any such factors in the instance of the second appraiser. (See Tr. 461–462.)

■ 4. Defendants contend that the Court erred in sustaining an objection to the following question propounded by counsel for defendants to one of the witnesses who had an interest in the property taken: "What have you paid on a per unit basis for apartment house land as to zoning areas in the District of Columbia?" (Tr. 188.) The Court sustained the objection to this question, made by the District of Columbia, for two reasons. First, "apartment house land * * * in the District of Columbia" is much too vague a reference for any appropriate comparability; such land varies enormously in value from area to area.[2] Second, since this witness had already volunteered the information

---

1. The existence of excavation, of course, was so clearly set forth as a factor in counsel's earlier question as not to be open to question, since he asked the witness to base his valuation upon "inspection of the site." (Tr. 227.) The Court nevertheless permitted the witness to increase his valuation by $12,000, the cost of the demolition and excavation. (Tr. 255.)

2. Counsel for defendants contends that the transcript is in error, and that the question was actually phrased not in terms of "apartment house land *as to zoning areas* in the District of Columbia," but rather "apartment house land [in] *SP zoning areas* in the District of Columbia." However, the Court recalls hearing the question the way the transcript states it. And when counsel im-

that 167 apartment units had been planned for the projected building (Tr. 183), the Court concluded that this line of questioning might unintentionally lead to testimony in which the witness would attempt to erect the planned building, and project hypothetical income and hypothetical expenses in order to capitalize the planned apartment-office building on a per unit basis. At a pretrial conference, defendants had agreed that this approach to value would not be used. The Court therefore properly exercised its discretion in sustaining the objection to the question.

■■■ 5. Defendants contend that the Court erred in excluding testimony of three sales which occurred shortly after the declaration of taking in the area around 12th and Massachusetts Avenue, N. W. Generally, sales made after the date of taking are inadmissible because such sales might have been affected by the taking itself, and would thus be inadmissible since fair market value must be established without any reference to the condemnation proceedings. Shoemaker v. United States, 147 U.S. 282, 303, 13 S.Ct. 361, 37 L.Ed. 170 (1893); International Paper Co. v. United States, 227 F.2d 201, 209 (5th Cir. 1955). Any such testimony is "peculiarly a matter for the discretion of the trial court." Jayson v. United States, 294 F.2d 808, 810 (5th Cir. 1961). In the present case, the Court exercised its discretion because the area of 12th and Massachusetts Avenue, N. W. is about nine blocks from the proposed inner loop freeway, which is a major highway planned to pass through the "center core" of the city. The testimony revealed that both the property that was taken by the District in these proceedings and the property at 12th and Massachusetts Avenue are in this center core of the city. Both areas are extremely likely to be substantially affected by this highway, and were thus likely to have had values affected after the date of taking by the taking itself. In any event, assuming *arguendo* that some sales after the date of taking might be admissible in some situations, see United States v. 63.04 Acres of Land, 245 F.2d 140, 144–145 (2d Cir. 1957), there was enough risk in this particular instance that any subsequent sales in this general area were affected by the taking to justify the Court in exercising its discretion by excluding testimony of any such later sales. (See Tr. 387.)[3]

■■ 6. Defendants contend that the Court erred in refusing to strike the entire testimony of the two appraisers for the District of Columbia because the two appraisers "failed to take into account relevant factors, specifically architect's plans and financing, in arriving at their valuation." (Tr. 385.) Defendants had the right, which they exercised extensively, to cross-examine plaintiff's two experts on this and other subjects. Any factors which the experts allegedly failed to consider were a matter for impeachment and argument; and any such impeachment was properly considered by the jury in determining what weight, if any, to give to the opinion of the experts. The jury was told that it could give any opinion of an expert such weight as it

---

mediately came to the bench to explain what he was getting at, he stated: "All I am trying to establish is the range of prices per apartment unit that is within the range of feasibility in the District and which I would then intend to use later as a double check against what the appraiser states when he comes in with his value as to that." (Tr. 189.) At the bench conference there was thus no limitation of the proffer to land in "SP zoning areas" (which is the zoning of the condemned land). The accuracy of the reporter's notes is therefore corroborated.

3. There is nothing inconsistent in the Court's determination on this point that the two areas are near enough to both be influenced by the proposed inner loop freeway (one by direct condemnation proceedings and the other by simply being nine blocks from the freeway), while at the same time determining in point (3) above that the two areas were remote in distance. Point (3) dealt with sales prior to the announcement of the freeway. It was the announcement of the freeway which made areas which had previously been remote from each other suddenly become closely related.

**720**

deemed it was entitled to receive, whether great or slight, and that it could reject such opinion completely if in the jury's judgment the reasons given for it were unsound. Clearly, the testimony of the two appraisers for the District of Columbia should not have been excluded in its entirety, as defendants contend.

For the reasons set forth above, the motion of defendants for a new trial will be denied.