John J. O’Brien, J.
These three cases were consolidated and tried before me. Each was an action to recover damages based on defendants’ negligence. On February 15, 1964, a tanker of defendants loaded with gasoline left the highway and struck a building located at 1551 Van Vranken Avenue, Schenectady, New York, resulting in an explosion and fire and causing the complete destruction of the building and its contents. Prior to trial, defendants admitted their liability and the trial was confined to the issue of damages.
The owner of the property is Thomas Mullen. The premises consisted of a one-story concrete block building fronting on Van Vranken Avenue with one side on Hattie Street. On the Hattie Street side with frontage on Van Vranken Avenue was a post office operated by Anne Mullen under contract with the United States Post Office Department. Adjoining it on Van Vranken Avenue were a restaurant, bar and grill operated by John De Novio. In the rear of the concrete structure was a two-story frame building, the first floor of which was used as a kitchen for the restaurant and the upper floor was rented for" residential purposes. The frame structure was erected about the year 1900. The concrete block structure was added in 1930 and along with the first floor of the frame structure occupied as a restaurant.
The building was on a lot 66 feet wide on Van Vranken Avenue and extending 119 feet along Hattie Street.
For the owner, an eminently qualified real estate broker and appraiser testified that the structure at the time of the incident on February 15, 1964 had a reasonable market value of $30,297.
CPLB. 4515 provides that ‘ ‘ Unless the court orders otherwise, questions calling for the opinion of an expert witness need not be hypothetical in form, and the witness may state his opinion and reasons without first specifying the data upon which it is based. Upon cross-examination, he may be required to specify the data and other criteria supporting the opinion.”
The owner’s expert, before giving his valuation, stated that he had been in the building many times as a patron and on *66 one occasion had been escorted through the premises. After he gave his opinion, defendants failed to cross-examine him to ascertain the facts upon which he based his opinion.
Defendants’ expert, also well qualified in the real estate appraisal field, acknowledged that appraisal posed a problem for him because the structure he had been called upon to appraise had been destroyed and the ruins removed, and therefore his appraisal was based on notes and records of others. He estimated the value of the entire property to be $25,000 of which $8,900 was for land and $16,100 was for the buildings. His appraisal was made on October 30, 1967, just less than four years after the accident and the destruction and removal of the buildings. The appraisal did not impress me.
It was based on hearsay and assumed facts. He lacked any knowledge of the condition of the structure, the layout of the rooms and the condition of the interior — not having been in the premises except once so long previously that he could not remember when it was. He had never examined the premises and did not know the condition of the walls, of the plumbing, of the electric wiring, of the plaster or of the heating plant. Upon cross-examination, it became apparent that the facts underlying the appraisal were not subject to cross-examination because not in evidence. In People v. Crossland (9 N Y 2d 464, 467) the court reaffirmed the principle “ that an opinion of an expert must be based upon facts which are produced in evidence before the jury ”. In Cassano v. Hagstrom (5 NY 2d 643, 646) the court said that “opinion evidence must be based on facts in the record or personally known to the witness * * *. He cannot reach his conclusion by assuming material facts not supported by evidence ”. Plaintiffs objected to the receipt in evidence of said expert’s appraisal. At that time, I overruled the objections, stating that they affected the weight to be given the appraisal but not the admissibility. I now find that such appraisal has no weight whatsoever.
Other reasons for rejecting the appraisal exist. There are errors in the capitalization of income approach. The appraiser characterized the income as the fair rental value. With respect to the rental income from the post office which was leased to the owner’s wife, and thus might have tended to be well below the fair rental value, he gave no explanation for considering it to be the fair rental value. Normally, an appraisal based on capitalization of the fair rental value is the best method of determining the value of a property (Matter of Wookvorth Co. v. Commission of Taxation of City of Plattsburgh, 45 Misc 2d 701, mod. *67 26 A D 2d 759). Under the circumstances here, the capitalization of income approach had little weight.
The reproduction cost less depreciation method also was defective. The expert assumed a reproduction cost based on a contractor’s estimate and the contractor was not produced. Moreover, the depreciation deduction of 60% was too high.
The comparables used to determine value were also wide of the mark. They bore no relation to the subject property.
Finally, the appraisal was more suited to a tax reduction case or to a condemnation, because of its stress on both structure and land. In this case, the land remains in the owner’s possession, untouched, not one square foot having been taken. Under the circumstances, the appraisal should have been geared to the value of the structures only.
Although defendants had the opportunity to cross-examine plaintiffs’ expert to determine the factual basis for his valuation, they declined to do so. It is regrettable the defendants chose not to bring out the facts on which plaintiffs’ expert based his valuation. It would have given the court a wider base on which to judge the fair market value. The choice was defendants’, and I assume they were content with the factual base of the valuation. I conclude that plaintiffs’ expert valued the property more nearly in accordance with its market value. On all the evidence I find plaintiffs’ property had, exclusive of the land, a fair market value on February 15, 1964 of $30,000.
Mr. Mullen owned aluminum storm windows for which he had paid $200 and Venetian blinds which cost him $120. These items of personal property were destroyed. For reasons discussed in respect to the claim of Mrs. Mullen, these items are allowed in full. Mr. Mullen is awarded $320, with interest.
Plaintiff Mullen offered two witnesses who testified that they or their concerns did work for Mr. Mullen in clearing the property and tearing down the chimneys which had remained standing and constituted a hazard. Plaintiff Mullen at first offered an exhibit which would have shown the cost to him of some of this work. Upon objection that it was not within the bill of particulars, the exhibit was withdrawn and although there was discussion that it would be offered, no further proof of the cost of clearing of the property was made. The work of Jackson’s Tree Service took one week. The work of Frank B. Wilcox took two days. Neither witness stated the reasonable value of the work. The expense incurred in removing debris is a proper charge against the tort-feasor (Forrester v. O’Rourke Eng. Constr. Co.. 48 Misc. 390). That the exact *68 amount expended has not been shown does not preclude a recovery (Duane Jones Co. v. Burke, 306 N. Y. 172, 192; Architector Co. v. Slomon, 192 Misc. 319, 324). Using good sense and judgment, combined with an idea of what such services are worth, I award Mullen for the two days’ work performed by Wilcox $40 and for the work of Jackson’s Tree Service, $100.
ANNE MULLEN
Mrs. Mullen is the wife of Thomas Mullen and leased from him, under an oral lease, the store on the northwesterly corner of the property adjacent to the restaurant, for a post-office substation under a three-year contract with the United States Post Office, which was scheduled to terminate on June 30, 1966. A previous and similar contract for three years had expired on June 30, 1963. Under it, she had realized a net profit of $1,700 for each of the two contract years prior to the contract year during which the premises were destroyed.
The duration of Mrs. Mullen’s operation of the business was long enough so that a determination of future profits is not purely speculative and is indeed reasonable. (13 N. Y. Jur., Damages, § 106 et seq.) These profits would reasonably have been realized during the approximately two-and one-half contract years remaining with the G-overnment but for defendants’ tortious conduct. (Steits v. Gifford, 280 N. Y. 15; Dickinson v. Hart, 142 N. Y. 183; Goldstein v. 104 Second Ave. Realty Corp., 194 Misc. 1.) Accordingly, I award her $638 for the loss of profits for the period from February 15, 1964 to June 30, 1964, $1,700 for the period from July 1, 1964 to June 30, 1965, and $1,700 for the period from July 1, 1965 to June 30, 1966, a total of $4,038, with interest from April 22, 1965 as “ a single reasonable intermediate date” (CPLR 5001, subd. [b]).
In connection with the operation of the post-office substation Mrs. Mullen had acquired personal property consisting of an adding machine, a desk, tables, chairs, stools, ladder, brooms, pails and mop, fans, heaters, file cabinets, partitions with counter, drawers, a built in desk and windows, a floor buffer, curtains and radio. I find that the partitions had not become part of the realty and they remained personal property. The total of these items of equipment amounts to $3,559. Defendants did not attempt to dispute the presence of the items in the premises and did not cross-examine Mrs. Mullen other than to ask whether depreciation had been taken on this equipment. The sums paid by Mrs. Mullen for them remained uncontradicted. The attorneys for the parties stipulated that if an *69 accountant had testified, he would have stated that the standard depreciation deduction for office furniture and equipment is 10% per annum. On this basis, all of the property except the floor fan, which was purchased for $40 in 1962, would have been fully depreciated.
Depreciation, with respect to personal property, is not a factor, as such, to be taken into consideration in computing damages. In American Jurisprudence (vol. 22, 2d ed., Damages, § 146) the rule is stated as follows: “ The ordinary and basic measure of damages for injury to personal property is the difference between its market value immediately before and after the injury, or in the case of its destruction, its market value at the time of destruction.” (Emphasis supplied.)
In Appleton & Co. v. Zeese-Wilkins on Co. (140 Misc. 653, 654) it was said: ‘1 the measure of damages for the loss * * * of personal property is the value of the property at the time of the loss or conversion (McIntyre v. Whitney, 139 App. Div. 557; affd. 201 N. Y. 526)”.
In Dubiner’s Bootery v. General Outdoor Adv. Co. (10 A D 2d 923) the court stated: “If the personal property is totally destroyed the market value at the time and place of their destruction should be shown * * * there was testimony as to the cost price, which is admissible as some evidence of value”. (See, also, Lobell v. Paleg, 154 N. Y. S. 2d 709; Eshan Realty Corp. v. Stuyvesant Ins. Co. (25 Misc 2d 828) and Consolidated Box Co. v. Penn (15 Misc 2d 705).
While there was no proof offered as to the market value of Mrs. Mullen’s personal property, the cost price was shown and I accepted it as some evidence of value. She is awarded the market value of all her personal property based on the cost price which defendants in no way contradicted, in the amount of $3,559, with interest.
JOHN DE NOVIO
This plaintiff operated the restaurant, bar and grill in the premises. He had a lease which was to terminate on September 30, 1967. He bought the business in October, 1961, taking an assignment of the lease, and commenced his operation of the restaurant on October 5, 1961. His income tax returns showed a profit from the business for the full calendar year of 1962 of $2,191.65. For the calendar year of 1963, he reported a profit of $12,062.46. While the experience for the determination of profits in this case is not as long as in Mrs. Mullen’s case, there is, in the exercise of discretion, a sufficient, reason *70 able basis on which to award loss of future profits. In view of the sharp increase in the profits between the years 1962 and 1963, approximately 600% greater, there is a reasonable expectation that an experienced operator who had increased his business by 600% in the second year, could reasonably expect to increase his business even further in the ensuing years. To base an award of profits on that future might be considered speculative (Steitz v. Gifford, 280 N. Y. 15). I prefer to make an award on the basis of the existing experience and award De Novio in round figures $12,000 per year in profits for the full years 1965 and 1966. I deduct one and one-half month’s profit for the year 1964 and award the sum of $10,500 for his loss of profits for the year 1964, and similarly, for the full nine months of the lease for the year 1967, I award the sum of $9,000. I recognize that the profitability of a business may be greater in some months than in others. Since there was no proof on that subject, I deem it reasonable to divide the profits equally so that each month’s profit is the same as any other month’s profit. The total awarded is $43,500. Interest on the loss of profits for Mr. De Novio should be computed from December 15, 1965 as a “ single reasonable intermediate date ” (CPLR 5001, subd. [b]).
For the reasons given with respect to the loss of personal property sustained by Anne Mullen, John De Novio is entitled to recover the market value of the personal property lost by him, without any deduction for depreciation, in the amount established as said market value by plaintiff’s expert witness Longe in Exhibit 5. The figures included in the proof of loss submitted to an insurance company by plaintiff De Novio purported to show an actual cash value of $11,027.95. The proof of loss contained an inventory identical with the one used by plaintiff’s expert Longe to establish the market value of the contents of the premises. The figures attached to the inventory showed a loss in excess of $22,000. Moreover the proof of loss was made out by an insurance adjuster. I accept as true proof of the market value the testimony of plaintiff’s expert. I therefore award $30,887.70 for the loss of equipment contained in Exhibit 5.
Plaintiff De Novio also lost cash in the amount of $900 and coins of approximately $110. I excluded on the trial proof of the loss of checks allegedly totaling $150. I award him $1,010 for the cash and coins with interest.
Plaintiff De Novio testified that he lost a set of golf clubs, golf bag and shoes for which he paid $150. He lost a bowling *71 ball for which he paid $25 and bowling shoes for which he paid $11. These items of personal property fall within the principle of Lobell v. Paleg (154 N. Y. S. 2d 709, supra) and their value to the owner is the price paid for them. He is awarded $186 for these items with interest.
Defendants contend that plaintiffs, particularly plaintiff De Novio failed to mitigate damages. Their proof as to this was testimony of the executive officer of the Schenectady County Alcoholic Beverage Control Board, to the effect that on-premises liquor licenses could be transferred. In their brief they argue that De Novio should have shown that he had made an attempt to procure a new location. Both parties cite Consolidated Box Co. v. Penn (15 Misc 2d 705, 708) with respect to mitigation of damages. The rule is there stated as follows:
1 ‘ Failure of an injured party to make a reasonable effort to minimize damages resulting from negligence does not bar recovery entirely but merely prevents recovery of such damage as might have been avoided by reasonable effort on his part. * * *
“ In this connection it should be noted, that the extent of the injured party’s duty is that he take reasonable means to mitigate the damage. He is under no obligation to take extraordinary or costly measures, or measures the efficiency of which is doubtful. * * *
“ Finally, in order to prevent a recovery of the full consequential damages, on the ground that the injured party willfully or negligently failed to minimize the damages, the burden is on the wrongdoer to prove the willful or negligent failure to mitigate damages. It is also incumbent on the wrongdoer to show that the damages would in fact have been diminished if certain measures had been taken * *
De Novio had no obligation to seek another location for his restaurant. The success of a restaurant is a combination of circumstances including its location, the business acumen of the owner, the personnel employed, etc. Had he sought another location and found one, it would have taken several years to open it. Such an effort on De Novio’s part falls into the extraordinary measures above mentioned, the efficacy of which in mitigating damages is doubtful. In any event, defendants could have asked plaintiff what he did along these lines but they failed to do so. Defendants thus did not establish that there was a willful or negligent failure to mitigate damages and failed to show that had he found another location, he would have earned profits in that location which the proven records, including *72 income tax returns, showed he had earned in the destroyed location. For all these reasons, I reject the claim that there should have been mitigation of damages.
Interest shall be awarded with respect to each item of damages at the rate of 6%. By chapter 349 of the Laws of 1968, section 5-501 of the General Obligations Law was amended to provide that the legal rate of interest shall be ‘ ‘ the rate prescribed by the banking board * * * or if no rate has been so prescribed, six percentum per annum”. Such rate is payable “ upon the loan or forbearance of any money, goods, or things in action ’ ’. The Banking Board did establish a higher rate of interest in the amount of 7.25% but its rule (3 NYCRR 34.1, 34.7) provided that “ the maximum rate of interest to be charged * * * upon a loan or forbearance * * * made on or after July 1, 1968 * * * shall be 7.25 percent per annum ” and (§ 34.7) “ This regulation shall apply only to a loan or forbearance made on or after July 1, 1968, and on or before September 1, 1971.” The damages here incurred were not a “ loan or forbearance ” and were not “ made on or after July 1, 1968 ”. The damages occurred on February 14, 1964 and are merely being awarded by this decision.