Jack Stanislaw, J.
This lawsuit, tried before the court without a jury, involves the rights and liabilities of two adjoining landowners. The claim is for property damage which occurred during a torrential rainstorm, following certain work done by defendants. The property in question is on the north side of Shore Drive, in a residential community known as Sound Beach, in the Town of Brookhaven, County of Suffolk. It is situated on top of a b5-foot cliff overlooking Long Island Sound.
Plaintiffs’ plot is 70 feet deep, running for approximately 80 feet along the cliff and about 130 feet along Shore Drive. On the extreme easterly side of the plot is a small one-story frame house, used as a weekend residence. The westerly side is vacant and unimproved. Immediately to the west of plaintiffs’ plot and running for about three quarters of a mile is land bounded on the north by the 65-foot cliff and on the south by Shore Drive, owned by defendant the Sound Beach Property Owners Association, Inc. (hereinafter “ Association ”).
Early in 1963, plaintiffs removed a large sand dune from the westerly side of their property but retained a three-foot-high mound above Shore Drive. A few months later, at the request of its members, the Association undertook to remove the 20 to 25-foot-high sand dunes which had accumulated over a period of some 20 years on the section of their property which is immediately adjacent to the westerly boundary of plaintiffs’ property and to open up a roadway for vehicular transportation along Shore Drive. This work was voluntarily performed and supervised, with the consent and approval of the Association, by defendant Salzano, one of its members.
*302 Plaintiffs claim that prior to defendants’ activities in that area, the sand dunes located on the Association’s property, as well as the heavy accumulation of sand in the bed of Shore Drive, served as a natural support and barrier protecting the westerly side of plaintiffs’ property from erosion and that the damage complained of was caused: (1) by defendants’ wrongful removal of said sand and sand dunes (as alleged in the first cause of action); (2) by defendants’ failure to give plaintiffs adequate notice of their intentions and plans to remove same and afford plaintiffs an opportunity to secure their property against damage resulting from such removal (as alleged in the second cause of action); and (3) by defendants’ failure to exercise reasonable care to protect plaintiffs’ property from the inherent risks and dangers resulting from such removal, all without fault by plaintiffs or their contributing thereto.
By way of defense, it is urged that plaintiffs are estopped from imposing their claim for liability upon defendants, since plaintiffs had removed the sand dune on their property prior to defendants’ removal of the sand dunes from the Association’s property.
During the rainstorm, which occurred on the night of July 14 and the early morning hours of July 15, 1963 (a day or so after defendants had completed their activities in that area) heavy torrents of water washed onto plaintiffs’ land, placing their house in apparent jeopardy. With the assistance of a neighbor, plaintiffs dug a trench on the westerly side of their land, permitting the water to flow over the cliff, in order to save their house. Following the storm, there was about a foot of water in their basement, but their house was secure. There were, however, several crevices, approximately 20 feet wide and 20 feet deep, over the westerly area of plaintiffs ’ property. Plaintiffs had not previously sustained any similar damage either before or after their removal and leveling off of the sand dime on their property. Defendants’ own witness testified that the work performed on plaintiffs’ property had been carefully done.
It is well settled that any natural or normal alteration of the surface of one’s land, through cultivation or improvement, resulting in the casting of surface waters upon the lands of another creates no liability, unless such surface water is collected in drains or ditches and thus cast upon the other’s premises (Barkley v. Wilcox, 86 N. Y. 140; Bennett v. Cupina, 253 N. Y. 436). We cannot hold, therefore, that the removal of the sand dunes from the Association’s property gives rise to liability.
*303 But defendants did more than that. They undertook to open up Shore Drive, in order to make it accessible for vehicular transportation. For many years prior to that time, most of the streets in that community, except for Shore Drive, were maintained by the town. The side streets, leading into Shore Drive, were paved with blacktop. Shore Drive, east of plaintiffs’ property and up to a telephone pole located just west of plaintiffs’ house but about 80 feet before their westerly boundary, was also paved with blacktop and accessible by automobile. West of the telephone pole, including the 80 feet abutting the westerly area of plaintiffs’ property, Shore Drive was and still is not paved. Nor was there a defined roadway along Shore Drive beyond the telephone pole. It had a heavy accumulation of sand and was barely passable by foot. The 20-foot sand dunes previously located on the Association’s property, which were removed by defendants, also extended well into the bed of Shore Drive. The evidence indicates that in performing their work, defendants had made no survey defining the boundary between Shore Drive and their property. They were also under the erroneous impression that plaintiffs’ property line started from the telephone pole where the road had been paved.
In clearing the road, defendants not only worked along Shore Drive where it abuts the Association’s own property, but extended their bulldozing and road clearance operations for about 80 feet in front of the westerly area of plaintiffs’ property. There is also evidence that defendants graded the roadway, which they had cleared, so that it pitched downhill from the Association’s property to the telephone pole located 80 feet east of the westerly boundary of plaintiffs’ property and that in so doing, leveled off the three-foot-high rise that had been left there by plaintiffs when they removed the sand dune from their property.
The court has inspected the premises on two separate occasions and examined the topography in that area. The first side street west of plaintiffs’ property, known as Cold Spring Drive, pitches very steeply downhill, as it enters Shore Drive. Thus, defendants’ removal of the heavy accumulation of sand and sand dunes in the bed of Shore Drive at or near its intersection with Cold Spring Drive and their downhill grading of Shore Drive along the westerly area of plaintiffs’ property created a new path for surface waters flowing downhill. Before defendants had opened up the roadway along Shore Drive, the downhill flow of surface waters was interrupted by the heavy accumulation of sand lying in the bed of Shore Drive west and *304 south of plaintiffs’ property. The removal of such sand not only opened a roadway, but created a channel for surface waters which could now flow downhill, without interruption, onto plaintiffs’ land.
The holding in Byrnes v. City of Cohoes (67 N. Y. 204) is particularly relevant. There, defendant constructed a gutter and curbing along the street abutting plaintiff’s property, permitting surface waters from other streets to flow down that street. Previously, there was a natural course which directed the water away from plaintiff’s property. But before the defendant had completed the curbing, the surface waters flowed onto plaintiff’s property, causing damage. Permitting recovery on that state of facts, the court held, at page 207: “ Diverting the water from its natural course so as to throw it upon the plaintiff’s premises, without providing any outlet, and thus injuring his business, was a wrong for which he is entitled to redress. The cases cited on the part of the appellant to the effect that a municipal corporation is not liable for an omission to supply drainage or sewerage, do not apply to a case where the necessity for the drainage or outlet is caused by the act of the corporation itself.” (Emphasis supplied.)
Thus, even if defendants’ opening of Shore Drive was not wrongful, but done as a service for residents of the community, they had an obligation to accomplish their task without creating a condition likely to cause damage to plaintiffs’ property. Where work is undertaken by a body authorized to perform a public service no action will lie against the party performing such work, so long as the authority is not exceeded and is properly exercised. But “ liability does attach where the authority is negligently or improperly exercised, and where, by a reasonable exercise of the power given either by statute or the common law, damages might be prevented ” (Seifert v. City of Brooklyn, 101 N. Y. 136, 145). In our opinion, it should reasonably have been anticipated that unless provision was made to accommodate or divert the uninterrupted flow of surface waters coming down Cold Spring Drive onto the roadway opened by defendants along Shore Drive, it would continue to flow downhill and onto plaintiffs’ land, causing property damage. It is our further opinion that defendants’ failure to anticipate the consequence of their activity along Shore Drive and take necessary steps to prevent the dangerous conditions thereby created or to withhold the opening of a roadway there until arrangements had been made to protect plaintiffs ’ property from such danger, constitutes negligence.
*305 There was no significant damage to the Association’s property following the rainstorm. But defendants urge that they are excused from liability for the damage to plaintiffs’ property since the storm that caused the damage also damaged other properties in that area and was an Act of God which could not have been anticipated. The court does not agree. “ The act of God, which exempts from liability, is something which operates without any aid or interference of man, and when the loss occasioned is the result in any degree of human aid, or interference, or if an act of human negligence contributed to the injury, or, though the injury proceed directly from natural causes, if it might have been avoided by human prudence and foresight, it cannot be considered the act of God ” (Woodruff v. Oleite Corp., 199 App. Div. 772, 773). While it may have been the heavy rainstorm which was the proximate cause of the damage, it was defendants’ operation along Shore Drive that was the prime contributing cause of the damage to plaintiffs’ property during the storm.
Following the occurrence, plaintiffs placed four-foot-high metal sheets around the circumference of their property and refilled the crevices created by the erosion. This work was necessary and is a proper element of damage. Plaintiffs seek an additional sum for the repair of their cesspool, but the evidence does not support that claim. Nor does it support their claim for the cost of constructing a proposed wooden retaining wall around their property. Moreover, such claim is beyond the scope of their bill of particulars, which states that “ the premises have been restored to their prior condition ”.
Accordingly, plaintiffs may have judgment on their third cause of action, grounded in negligence, in the sum of $1,200. The first and second causes are dismissed.