**OLIN CORPORATION, Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, the Hanover Insurance Company (as successor to Massachusetts Bonding and Insurance Company), American Home Assurance Company, American Re-Insurance Company, Certain Underwriters at Lloyd's, London, Commercial Union Insurance Company (as successor to Employers' Liability Assurance Corporation, Ltd., and Employers Commercial Union Insurance Company of America), Continental Casualty Company, Employers Insurance of Wausau a Mutual Company, Falcon Insurance Company (as successor to Employers' Surplus Lines Insurance Company), Federal Insurance Company, Fireman's Fund Insurance Company, Great American Insurance Company, the Home Insurance Company, Lexington Insurance Company, London & Edinburgh Insurance Company Limited, National American Insurance Company of New York (as successor to Stuyvesant Insurance Company), National Union Fire Insurance Company of Pittsburgh, North River Insurance Company, Northbrook Excess and Surplus Insurance Company, and Transit Casualty Company, Defendants.**

No. 84 Civ. 1968 (LFM).

United States District Court, S.D. New York.

March 6, 1985.

Kissam, Halpin & Genovese by James J. Harrington and Norma B. Levy, New York City, for plaintiff.

Davis, Polk & Wardwell by Guy Miller Struve, Paul R. Koepff, Cheryl L. Pollak, Daniel L. Brockett, and Lisa Huestis, New York City, for defendant Insurance Company of North America.

## OPINION

MacMAHON, District Judge.

Plaintiff Olin Corporation ("Olin") moves, pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment against defendant Insurance Company of North America ("INA") declaring that INA is liable for 100% of Olin's defense costs incurred defending the underlying claims. INA cross-moves for partial summary judgment declaring that defense costs should be paid either equally or proportionately by INA, Olin, and the three other primary insurers, namely, Hanover Insurance Company ("Hanover"), National Union Fire Insurance Company ("National"), and Employer's Insurance of Wausau ("Wausau"). Under Rule 53(e), Fed.R. Civ.P., INA also seeks reversal of the rulings of the Special Master sustaining certain claims of settlement privilege asserted by Olin under Rule 408, Fed.R.Evid.

## FACTS

This action arises from several suits brought against Olin for bodily injury and property damage resulting from dichlorodiphenyltrichloroethane ("DDT"). The individual plaintiffs, numbering in the thousands, alleged that their injuries occurred during the period 1947 to the date of the filing of the suit. Olin defended the suits at a cost of $7.3 million and settled with the majority of the plaintiffs for $24 million. Olin seeks to recover defense costs on this motion.

Olin first became involved in the manufacture of DDT in 1954, when it acquired the Calabama Chemical Company which had been manufacturing the chemical since 1947. Olin ceased production of DDT on June 30, 1970.

Massachusetts Bonding and Insurance Company, now Hanover, provided primary insurance coverage to Olin from January 1, 1954 to January 1, 1956. INA provided coverage from at least June 1, 1955 through January 1, 1974, although there is a dispute as to the existence and applicability of INA policies covering the period from 1947 to 1954. During the period January 1, 1974 to March 1, 1977, Wausau provided primary insurance coverage to Olin. National has provided primary insurance coverage from March 1, 1977 to date.

## DISCUSSION

### Defense Costs

■ We cannot resolve issues of fact on a motion for summary judgment. *Heyman v. Commerce & Industry Ins. Co.*, 524 F.2d 1317, 1319 (2d Cir.1975). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444 (2d Cir.1980). Where a contract, including an insurance contract, is susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence, and, thus, summary judgment is precluded. *Schering v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983).

Olin asserts that INA is liable for the entire defense costs of the DDT cases even though there were periods during which Olin was uninsured or self-insured. Essentially, Olin argues that once a carrier is at risk, provided the insurer has not excluded the possibility that an uncovered claim is pleaded in a complaint, it is liable for all defense costs on all claims, potentially covered as well as potentially uncovered. Once a policy is triggered, the insurer must pay defense costs for all claims.

INA admits that it is liable for some of the defense costs, but argues that Olin is liable for defense costs for claims arising during the period 1947 to 1954, when Olin was uninsured or self-insured, and for claims arising during 1971 to 1974 under an endorsement to policy SRL 2217 in which Olin agreed to share defense costs.

■ It is well settled that the duty to defend is broader than the duty to indemnify. *American Home Pdts. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1499 (S.D.N.Y.1983), *aff'd. as mod.*, 748 F.2d 760 (2d Cir.1984). An insurance company has a duty to defend, even meritless suits, "so long as they could conceivably result in a liability covered by the policy" but "has no duty to defend claims which may have merit, but for which liability coverage does not exist because injury occurred outside the policy period." *Id.*, 565 F.Supp. at 1499.

In light of this broad duty to defend, INA is liable for defense costs, even for claims which appear meritless, so long as the policy is triggered. The INA comprehensive general liability policies issued to Olin applied to occurrences or accidents during the respective policy periods. The question for us is whether INA's policies are triggered.

■ Coverage is triggered upon the occurrence of an injury in fact during the policy period. *Id.*, 748 F.2d at 765. To establish liability, "the insured must prove the cause of the occurrence (accident or exposure), the result (injury, sickness, or disease), and that the result occurred during the policy period." *Id.*, 565 F.Supp. at 1497. The occurrence must arise during the policy period and may take place at any or all points from exposure to manifestation. *Id.*, 565 F.Supp. at 1497–98.

■ The question of whether the occurrences arose during the policy period is yet to be determined. Neither party has offered sufficient evidence on whether the results (injury, sickness, or disease) occurred during the period of INA's policy. Since it cannot be determined whether INA's coverage is triggered, we cannot de-

termine the extent of its duty to defend and summary judgment is precluded.

■ The endorsement to primary policy SRL 2217 provided that (1) if INA does not pay any indemnity, then Olin must pay all defense costs, and (2) if INA does make such a payment, INA and Olin will share proportionately the payment of defense costs. This endorsement altered INA's general duty to defend for the time period January 1, 1971 to January 1, 1974. Whether INA or Olin is responsible for defense costs for the period covered by this endorsement hinges on INA's obligation to make indemnity payments in the underlying actions. Since INA's payments are yet to be determined, summary judgment is precluded.

INA further argues that Olin is liable for defense costs which should be attributable to other primary insurance carriers because of Olin's agreements with those carriers to pay their defense costs. However, before determining whether Olin is liable for those costs, we must determine whether the policies of Wausau, National, and Hanover are triggered.

■ Wausau argues that its liability for defense costs depends on its indemnity liability under the Retention Endorsement Provision of its contract with Olin. It also argues that the contract's Pollution Exclusion excuses it from any liability because the underlying claims do not allege that the discharge of DDT was sudden and accidental as covered in the policy. It is not clear, in light of these provisions and the facts as they are currently presented, whether Wausau's policy is triggered.

■ National claims that its contract with Olin was not for insurance, but rather was for services only. It claims that there was no transfer of risk since Olin agreed to indemnify National for any losses or expenses. These are more than bare conclusory statements and legitimately raise issues of fact as to whether National's policy is triggered.

It is also not clear whether Hanover's policies, which allegedly covered the time period January 1, 1954 to January 1, 1956, are effective. The validity and completeness of the submitted policies can only be determined after the presentation and examination of the surrounding extrinsic evidence.

■ Issues of fact are raised as to whether the policies of these three carriers are triggered. These factual disputes, therefore, preclude any determination of Olin's liability under these policies. In addition, little discovery has been conducted with respect to these three carriers. Summary judgment should not be granted while the parties opposing judgment seek discovery of potentially favorable information. *Schering v. Home Ins. Co., supra,* 712 F.2d at 10.

*Special Master's Rulings*

INA also seeks an order reversing the rulings of the Special Master finding that various documents concerning discussions by counsel representing Olin, INA, Wausau, and Hanover, held from November 1981 to December 1982, were privileged and protected from discovery pursuant to Rule 408, Fed.R.Evid. The Special Master also ruled that the settlement privilege prevented INA from obtaining discovery of an amendment to the Wausau policy concerning the extent to which Wausau would pay defense costs.

■ Rule 408 provides that evidence of conduct or statements made in compromise negotiations is not admissible to prove liability or invalidity of the claim, although it may be admissible on other grounds, including to prove bias or prejudice of a witness. The purpose of the rule is to encourage full and frank disclosure between the parties in order to promote settlements rather than protracted litigation.

■ INA contends that the discussions were not settlement negotiations, but rather were business communications since there was no litigation filed or even contemplated at the time. INA claims that the insurers met with Olin to discuss the nature of the claims asserted and the merits

of the underlying lawsuits; the discussions related to the various insurers' positions with respect to their reservation of rights as to coverage. If these were merely business communications which were relevant and material, they would be discoverable. *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365 (10th Cir. 1977). However, we agree with the findings of the Special Master that these were settlement negotiations concerning the rights and liabilities of the insurers to defend and to indemnify the underlying claims against Olin.

Olin contemplated that litigation might be necessary when the involved insurers refused to defend or to indemnify the DDT claims. Olin, as well as the three primary insurers, retained outside counsel who were involved in the settlement discussions. Moreover, in a January 1982 letter to counsel for Wausau, counsel for INA conceded that litigation was possible. These discussions were more than mere business communications between company officials, as in *Big O Tire Dealers*, and constituted settlement negotiations to avoid the litigation of a potentially costly and complex suit.

 In the alternative, INA argues that the exclusion under Rule 408 applies and the documents should be disclosed since they are relevant and material to Olin's claim of bad faith against INA and are admissible to impeach and to show bias. While Rule 408 may not exclude evidence that shows the bad faith failure of an insurance carrier to settle, *Urico v. Parnell Oil Co.*, 708 F.2d 852, 854–855 (1st Cir. 1983), INA fails to recognize that Olin's claim for bad faith refers to INA's failure to defend the DDT claims and not to INA's failure to settle.

INA has also failed to support its contentions adequately that the evidence may be used to impeach or to show bias. In addition, counsel for INA were present at the negotiations, and, to the extent admissible, their witnesses will be able to testify without discovery of Olin's privileged documents.

INA's contention that discovery of the Wausau primary policy amendment is necessary to show motive and bias of Wausau with respect to this litigation is also without merit. Although the issue of appropriate shares of defense costs is presently pending, discovery of the terms of the agreement between Olin and Wausau is denied in order to safeguard the policy favoring settlements. *Bottaro v. Hatton Associates*, 96 F.R.D. 158 (E.D.N.Y.1982). However, to advance this litigation, Olin is required to reveal only the "bottom line" information of its agreement with Wausau.

Accordingly, summary judgment is denied to both parties. INA's motion to reverse the rulings of the Special Master is also denied.

So ordered.