**AVONDALE INDUSTRIES, INC. and Ogden Corporation, Plaintiffs,**

v.

**The TRAVELERS INDEMNITY COMPANY, Defendant.**

**The TRAVELERS INDEMNITY COMPANY, Third–Party Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, Highlands Insurance Company, American Motorists Insurance Company, and National Union Fire Insurance Company, Third–Party Defendants.**

**No. 86 Civ. 9626 (KC).**

United States District Court, S.D. New York.

Oct. 19, 1988.

Ed Joyce, Hugh N. Fryer, Fryer Ross and Gowen, New York City, for plaintiffs.

Emily Levine, Rivkin, Radler, Dunne and Bayh, Uniondale, N.Y., for Commercial Union Fire Ins. Co.

J. Portis Hicks, Drinker, Biddle and Reath, New York City, for American Motorists Ins. Co.

Seth A. Ribner, Simpson, Thacher and Bartlett, New York City, for Travelers Indem.

Levy, Bivona and Cohen, New York City, for Nat. Union Fire.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

Plaintiffs brought the instant action for a declaratory judgment, pursuant to 28 U.S.C. section 2201 (1982), that the defendant is obligated to defend and indemnify plaintiffs under comprehensive general liability ("CGL") insurance policies issued by defendant to plaintiffs,[1] covering the period

---

1. Plaintiff Ogden Corporation is listed as named insured. *See, e.g.,* Complaint Ex. A. However,

1975–1984. *See* Complaint para. 6. Plaintiff Avondale currently is a defendant in at least fourteen private damage actions in Louisiana stemming from third parties' allegedly tortious operation of a hazardous or toxic waste disposal or storage site (the "site") in that state. Avondale is involved because it contracted with one of the operators of the site to sell the operator, during the period December 1975 to October 1979, "salvage oil," defined as "oil, residual fuel, cargo and other materials." *See* Affidavit of R. Dean Church, executed Oct. 5, 1987, at paras. 4, 6. The private damage actions allege that Avondale's salvage oil contributed in an unspecified manner to the creation of the pollution at the site.

Avondale also seeks defense and indemnification for actions being taken by the Louisiana Department of Environmental Quality ("DEQ") to clean up the site. *See* Complaint Ex. B.

Jurisdiction is predicated on diversity of citizenship between plaintiffs, Delaware corporations having their principal places of business in Massachusetts (Avondale) and New York (Ogden), and defendant, a Connecticut corporation having its principal place of business in Connecticut. *See* 28 U.S.C. § 1332(a)(1) (1982). The action is before the court on plaintiffs' motion for partial summary judgment, pursuant to Fed.R.Civ.P. 56(a), that defendant is obligated to defend them in both the private actions and the process initiated by the State of Louisiana.

## LEGAL ANALYSIS

The court applies New York law to the contracts between plaintiffs and defend-

---

"[n]amed insured" includes Ogden's subsidiaries. *See id.* § IV(I). Plaintiff Avondale Industries, Inc. is a successor to a subsidiary of Ogden Corporation named Avondale Shipyards, Inc. *See* Affidavit of R. Dean Church, executed Oct. 5, 1987, at para. 2. Avondale Shipyards, Inc. existed during the time period relevant to the underlying actions, and in fact is the company that dealt with one of the owners of the waste site found to be polluted.

2. Some of the third-party defendants to the action, who are *not* parties to *this* motion, urge that the court make no choice of law determination at this time. They submit that they will argue at the appropriate time that their con-

---

ant.[2] "[T]he duty of the insurer to defend the insured[s] rests solely on whether the complaint[s] [against the insureds] allege[ ] *any facts or grounds* which bring the action[s] within the protection purchased." *Seaboard Surety Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 476 N.E.2d 272, 275, 486 N.Y.S.2d 873, 876 (1984) (emphasis added); *see National Grange Mutual Ins. Co. v. Continental Casualty Ins. Co.,* 650 F.Supp. 1404, 1408 (S.D.N.Y.1986) ("Even if some of the allegations of the underlying complaint are clearly outside the scope of the coverage contained in the policy, the insurer is obligated to defend unless the allegations as a whole preclude coverage."); *Utica Mutual Ins. Co. v. Cherry,* 38 N.Y.2d 735, 736–37, 343 N.E.2d 758, 758, 381 N.Y.S.2d 40, 40 (1975) (mem.) (insurer's duty to defend triggered where underlying complaint asserts alternative grounds for relief, and only some of those grounds are within the policy's coverage), *aff'g* 45 A.D. 2d 350, 353, 358 N.Y.S.2d 519, 522 (2d Dep't 1974). "The duty to defend arises not from the probability of recovery but from its possibility, no matter how remote. Any doubt as to whether the allegations state a claim covered by the policy must be resolved in favor of the insured as against the insurer." *George Muhlstock & Co. v. American Home Assurance Co.,* 117 A.D. 2d 117, 122, 502 N.Y.S.2d 174, 178 (1st Dep't 1986).

### A. The Private Lawsuits

The eight underlying complaints provided to the court, *see* Complaint Ex.

---

tracts of insurance with the plaintiffs are governed by Louisiana law. Assuming that a true conflict of laws exists, the court stresses that it has not determined what law should apply to those other contracts. Indeed, it may be constitutionally impermissible to apply New York law to those other contracts. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 820–22, 105 S.Ct. 2965, 2978–80, 86 L.Ed.2d 628 (1985) (in nationwide class action concerning leases, application of forum law to claims over which forum had developed no state interests, when forum law conflicted with that of interested states, was "sufficiently arbitrary and unfair as to exceed constitutional limits").

C–G; Plaintiffs' Motion For Partial Summary Judgment Ex. L–N,[3] allege, in substance, the following relevant facts: the site operator operated the site from the 1960s until at least 1982; Avondale was one of many companies whose waste products were disposed of at the site; and, the site contains hazardous or toxic waste. Significantly, there are no allegations as to how the waste escaped or seeped, nor as to Avondale's culpable actions that contributed to the occurrence. While Avondale may have continuously generated these waste products, it does not follow necessarily, and the private actions certainly have not alleged, that Avondale continuously, by its own actions or through the actions of an agent, intentionally polluted.[4] All of Avondale's products may have been properly stored, and escaped in a single incident. This is a factual matter that will be determined at the trial(s) of the underlying actions.

For purposes of this motion only, the court assumes that defendant's offered construction of the meaning of the word "sudden" in plaintiffs' policies is correct. *See American Motorists Ins. Co. v. General Host Corp.*, 667 F.Supp. 1423, 1428 (D.Kan.1987) ("Even if 'sudden' is not limited to an instantaneous happening, it still must be on brief notice, and must be unexpected. No use of the word 'sudden' or 'suddenly' could be consistent with an event which happened gradually or over an extended time, nor could it be consistent with an event which was anticipated or predictable."). *Contra Broadwell Realty Servs. v. Fidelity & Casualty Co.*, 218 N.J.Super. 516, 530–36, 528 A.2d 76, 83–86 (App.Div.1987) (rejecting argument that "sudden" has a temporal meaning, and holding that it means only "unexpected and unintended"). Even under this more restrictive view, there is a question of fact whether the dispersal of Avondale's waste

product comes within the policies. *See* discussion *supra* at 1316–17.

The existence of factual disputes, material to the issue of indemnification, in the underlying private lawsuits requires the court to hold that as a matter of law, the defendant has failed to demonstrate "that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insureds] under any provision contained in the polic[ies]." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848, 476 N.E.2d 640, 641, 487 N.Y.S.2d 314, 315 (1985) (mem.). The defendant's assertion that Avondale was an active, continuous polluter is a conclusion that is not established on the underlying pleadings. The matter outside the pleadings submitted by the defendant is irrelevant to the determination of its duty to defend; such matter is relevant only to its duty to indemnify.

The defendant argues that summary judgment is inappropriate because there is an extant factual dispute as to the parties' intent in drafting the pollution exclusion clause to the insurance contracts, citing *Olin Corporation v. Insurance Company of North America*, 603 F.Supp. 445 (S.D.N.Y.1985), and *County of Broome v. Aetna Casualty & Surety Company*, slip op. (N.Y.Sup.Ct. June 24, 1988). Each of those cases denied motions for partial summary judgment because a factual question existed whether the insurer was obligated under the policy to indemnify the insured. *See Olin Corp.*, 603 F.Supp. at 448–49; *County of Broome*, slip op. at 11. However, the Circuit Court of Appeals for the District of Columbia has held that the holdings of *Olin Corporation* and *County of Broome* are "simply inconsistent with New York law." *Abex Corp. v. Maryland Casualty Co.*, 790 F.2d 119, 129 n. 44 (D.C.Cir.1986) (applying New York law) (discussing *Olin*

3. The court has been informed that six additional private lawsuits have been filed. *See* Letter from Hugh N. Fryer to Hon. Kenneth Conboy (Oct. 14, 1988).

4. The absence of any such allegation distinguishes this action from *EAD Metallurgical, Inc. v. Aetna Casualty & Surety Co.*, —— F.Supp. ——, No. CIV–86–1027E, slip op. (W.D.N.Y. July 12,

1988), in which the insured allegedly directly polluted. *See id.*, at ——. Also distinguishable is *Technicon Electronics Corporation v. American Home Assurance Company*, App.Div., 533 N.Y.S.2d 91 (2d Dep't 1988), in which the insured conceded that it had intentionally discharged industrial wastes. *See id.*, at 93.

*Corp.*); *see, e.g., Villa Charlotte Bronte, Inc.,* discussed *supra* at 1317. The court declines to follow *Olin Corporation* and *County of Broome.* "Only disputes over facts that might affect the outcome of the suit under the governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[W]hether the parties intended Travelers [sic] policies to provide limited pollution coverage for sudden, accidental primary discharges of pollutants or some broader insuring obligation that extends to Avondale's continuous waste disposal activity," *see* Defendant's Memorandum of Law in Opposition, at 39, is immaterial to resolving the question of the defendant's duty to provide the plaintiffs with a defense, because the underlying complaints are so ambiguous that a claim within the purchased coverage is alleged under the more restrictive interpretation.

The court concludes that the defendant is obligated to provide a defense for the plaintiffs in the private lawsuits.

**B. The Department of Environmental Quality Demand**

The policies of insurance contain the standard section on liability, including the following relevant language: "[T]he [insurer] shall have the right and duty to defend any suit against the insured seeking damages [because of bodily injury or property damage] on account of such injury or damage." The defendant raises two objections to plaintiffs' request that it defend them with respect to the administrative process begun by the Louisiana Department of Environmental Quality to clean up the site. First, the defendant claims that cleanup costs are not "damages," so that the policies provide no coverage. Second, the defendant argues that the administrative process is not a "suit" that it is required to defend.

1. *Whether the proceeding by the Louisiana DEQ raises any claim coming within the policies' coverage as damages*

■ The cases are split on the question whether waste site cleanup costs constitute "damages" under CGL policies, or whether such costs are "restitutional," and therefore not covered. *Compare United States Fidelity & Guaranty Co. v. Thomas Solvent Co.,* 683 F.Supp. 1139, 1163–65, 1168–71 (W.D.Mich.1988) (applying Illinois law) ("While ... claims [for cleanup costs] might be characterized as seeking 'equitable relief,' the cleanup costs are essentially compensatory damages for injury to common property and for that reason the insurer has a duty to defend."), *vacated on other grounds, id.* at 1174–77 (W.D.Mich. 1988) *and New Castle County v. Hartford Accident & Indemnity Co.,* 673 F.Supp. 1359, 1362, 1364–1366 (D.Del.1987) (applying Delaware law) ("an ordinary definition of the word 'damages' makes no distinction between actions at law and actions in equity") *and Broadwell Realty Servs.,* 218 N.J. Super. at 525–30, 528 A.2d at 81–83 (recognizing "that the cost of complying with an injunctive decree does not ordinarily fall within" the definition of "damages," yet holding that certain cleanup expenses are covered by CGL policy) *with Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.,* 842 F.2d 977, 978, 984–87 (8th Cir.) (en banc) (applying Missouri law) (5–3 majority holding that cleanup costs are in the nature of equitable relief, and therefore "are not claims for 'damages' under ... CGL policies"), *petition for cert. filed,* 56 U.S.L.W. 3850 (U.S. May 27, 1988); *Maryland Casualty Co. v. Armco, Inc.,* 822 F.2d 1348, 1351–54 (4th Cir.1987) (applying Maryland law) ("damages" has a "legal, technical meaning" which excludes "the costs ... of complying with the directives of a regulatory agency"), *cert. denied,* — U.S. ——, 108 S.Ct. 703, 98 L.Ed.2d 654 (1988). New York trial courts have split in the same manner. *Compare Kutsher's Country Club Corp. v. Lincoln Ins. Co.,* 119 Misc.2d 889, 889–93, 465 N.Y.S.2d 136, 137–39 (Sup.Ct.1983) (cleanup costs constitutes "property damage" within CGL policy) *with County of Broome,* slip op. at 20–21 (costs involved in "remedial program" are not covered by CGL policy). The Second Department did not address the

issue in its decision in *Technicon Electronics Corporation.* *See* 533 N.Y.S.2d at 104–05.

In New York, the terms of an insurance policy are to be accorded "a natural and reasonable meaning." *Doyle v. Allstate Ins. Co.,* 1 N.Y.2d 439, 443, 136 N.E.2d 484, 487, 154 N.Y.S.2d 10, 13 (1956). Moreover, the terms are construed according to "the reasonable expectation and purpose of the ordinary businessman." *Ace Wire & Cable Co. v. Aetna Casualty & Surety Co.,* 60 N.Y.2d 390, 398, 457 N.E.2d 761, 764, 469 N.Y.S.2d 655, 658 (1983); *see Bird v. St. Paul Fire & Marine Ins. Co.,* 224 N.Y. 47, 51, 120 N.E. 86, 87 (1918).

In light of the foregoing precedent from the New York Court of Appeals, the court concludes that that court would find that cleanup costs do come within the CGL's coverage as "damages." As a general matter, such costs may extend to include funds necessary for restoration of third parties' properties. *See, e.g., Broadwell Realty Servs.,* 218 N.J.Super. at 527–31, 528 A.2d at 82–83 (differentiating between expenditures for prevention of damage to other parties' properties and expenditures for damage to insured's property). Specifically, the relevant Louisiana statute speaks of liability for a "pollution source," La.Rev. Stat.Ann. § 30:1149.46(A) (West Supp. 1988), which "means the site or location of a discharge or potential discharge, *including such surrounding property necessary to secure or quarantine the area.*" *Id.* § 30:1133(10) (West Supp.1988) (emphasis added); *see id.* § 30:1149.42(8) (West Supp. 1988) (referring to the definition in section 30:1133). The court expects that Louisiana's DEQ would require parties to contribute towards the cleanup of others' properties, if they constitute part of a "pollution source."

The average businessman does not differentiate between "damages" and "restitution;" in either case, money comes from his pocket and goes to third parties. *See United States Fidelity & Guaranty Co.,* 683 F.Supp. at 1168 ("the insured ought to be able to rely on the common sense expectation that property damage within the meaning of the policy includes a claim which results in causing him to pay sums of money because his acts or omissions affected adversely the rights of third parties"). The average businessman would consider himself covered for cleanup expenditures applicable to others' properties. Cases such as *Armco Inc.,* which apply a "legal, technical meaning" to the word "damages," *see id.* at 1352, are inapposite to this case, to which New York law, mandating construction according to "the reasonable expectation and purpose of the ordinary businessman," applies.

The court notes that New York cases have held that cleanup costs for real property are properly recoverable as a form of "damages." *See Jenkins v. Etlinger,* 55 N.Y.2d 35, 38–40, 432 N.E.2d 589, 590–91, 447 N.Y.S.2d 696, 697–98 (1982) ("the proper measure of damages for permanent injury to real property is the lesser of the decline in market value and the cost of restoration"); *Seifert v. Sound Beach Property Owners Ass'n,* 60 Misc.2d 300, 305, 303 N.Y.S.2d 85, 90 (Sup.Ct.1969) (work undertaken to restore property to its prior condition "is a proper element of damage"); *Mullen v. Jacobs,* 58 Misc.2d 64, 67–68, 71–72, 294 N.Y.S.2d 636, 640, 643–44 (Sup.Ct.1968) (expense incurred in removing debris from real property is a proper element of damages recoverable from tortfeasor). While these cases did not attempt to differentiate "damages" from "restitution," and did not concern insurance coverage for pollution cleanup, nevertheless they support the conclusion that the reasonable businessman would consider himself covered for such expenditures. If courts employ such language, surely it is appropriate for a businessman to consider himself to be covered for these expenditures.

Alternatively, even assuming the New York Court of Appeals would hold that cleanup costs are entirely restitutionary, and therefore not covered, the defendant would still be obligated to provide the plaintiffs with a defense in the administrative proceeding (assuming that such proceeding is a "suit"). This is because the state of Louisiana could elect to recover

damages rather than restitution, or because a Louisiana court might decide that damages are appropriate, rather than restoration. The statute certainly contemplates the possibility that the state might recover damages, see La.Rev.Stat.Ann. § 30:1149.42(9)(a)(xiii) (West Supp.1988) (authorizing secretary of department of environmental quality to take any action, besides those otherwise enumerated, deemed "necessary to restore the site *or remove the hazardous substance*") (emphasis added), and Louisiana courts would likely recognize the general principle that in the discretion of the court compensatory damages may be awarded in lieu of equitable relief. See *Dyer & Moody, Inc. v. Dynamic Constructors, Inc.,* 357 So.2d 615, 618–19 (La.Ct.App. 1st Cir.1978) (trial court did not commit error in awarding money judgment as compensatory damages in lieu of mandatory injunction); *Freestate Indus. Dev. Co. v. T. & H., Inc.,* 188 So.2d 746, 748 (La.Ct.App. 2d Cir.1966) ("The jurisprudence has established the principle that in the discretion of the court compensatory damages may be awarded in lieu of injunctive relief."). Because the state of Louisiana possesses this option, the defendant is obligated under New York law to provide a defense.

In *Doyle v. Allstate Insurance Company,* the New York Court of Appeals held that an insurer was obligated to defend its insured against an action seeking injunctive relief only, because the possibility existed that a court of equity might "grant damages in addition to or as an incident of some other special equitable relief." 1 N.Y.2d at 441–44, 136 N.E.2d at 485–87, 154 N.Y.S.2d at 11–14. Thus, the defendant is obligated, as the possibility exists, even if unstated, and even if remote, that the plaintiffs might be held responsible for damages to others' properties through the cleanup process.

### 2. Whether the Administrative Process Constitutes a Suit

■ There had been conflicting New York trial court precedents on the question whether an administrative process such as that initiated by the Louisiana DEQ is a "suit" which triggers the coverage of the CGL policy. *Compare Technicon Elec. Corp. v. American Home Assurance Co.,* No. 08811/85, slip op. at 1–2, 4–5 (N.Y. Sup.Ct. Feb. 18, 1986) (governmental cleanup proceeding is a "suit" requiring insurer to provide a defense) *with County of Broome,* slip op. at 20–21 (governmental cleanup proceeding is not a "suit" requiring insurer to provide a defense). However, *Technicon Electronics Corporation* was recently reversed by the Appellate Division, Second Department. *See Technicon Elec. Corp. v. American Home Assurance Co.,* App.Div., 533 N.Y.S.2d 91, 104–05 (2d Dep't 1988). The court did conclude, in dicta only, that such a proceeding is not a "suit" requiring a defense by the insurer.

The Second Department relied on three cases in making its determination—*Detrex Chemical Industries, Incorporated v. Employers Insurance,* 681 F.Supp. 438 (N.D. Ohio 1987), *City of Evart v. Home Insurance Company,* slip op. (Mich.Ct.App. Aug. 5, 1987), and *County of Broome v. Aetna Casualty Company,* slip op. (N.Y. Sup.Ct. June 24, 1988). The court held that the demand letter sent Technicon Electronics Corporation by the Environmental Protection Agency

merely informed Technicon of its potential liability under [relevant federal law] and that the EPA was interested in discussing Technicon's voluntary participation in remedial measures. The letter was an invitation to voluntary action on Technicon's part and is not the equivalent of the commencement of a formal proceeding within the meaning of the subject comprehensive general liability policies.

*Technicon Elec. Corp.,* 533 N.Y.S.2d at 105.

Decisions rendered by lower state courts are not controlling on federal courts construing state law when, as here, the state's highest court has not ruled on the issue. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Such decisions are "dat[a] for ascertaining state law which is not to be disregarded by a

federal court *unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." Id.* (emphasis in original) (quoting *West v. A.T. & T. Co.,* 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

None of the three cases cited by the Second Department is persuasive to this court. *County of Broome* turned on the determination that the governmental administrative process did not constitute a suit *for damages, see id.,* slip op. at 21, a conclusion at odds with the court's conclusion that cleanup costs are damages. *See* discussion *supra* at 1318–20.

Critical to the court's decision in *Detrex Chemical Industries* was the equation of a governmental demand letter with other forms of "claims," to which the insurer is not obligated to provide a defense. *See* 681 F.Supp. at 442–46. The two cases cited by the court to make the general point are distinguishable from governmental demand letters in a crucial, and to this court determinative, fact. In both *Fisher v. Hartford,* 329 F.2d 352 (7th Cir.1964) and *Marvel Heat Corp. v. Travelers Indemnity Co.,* 325 Mass. 682, 92 N.E.2d 233 (1950), there was nothing the party asserting the claim against the insured could do between the occurrence of the tort and the initiation of a lawsuit that would adversely affect the insured's rights, because the claims were for common law torts. *See Fisher,* 329 F.2d at 353 (personal injury); *Marvel Heat Corp.,* 325 Mass. at 682, 92 N.E.2d at 233 (property damage). On the other hand, as the court in *Detrex Chemical Industries* acknowledged, the government has discretion in choosing responsive action in combatting pollution sites. *See* 681 F.Supp. at 446–47. By choosing a more expensive option, the government can adversely affect the insured's rights.

Thus, the analogy drawn by the court in *Detrex Chemical Industries* is not apt. Adverse consequences can befall an insured during the administrative pollution cleanup process. The acting governmental agency could select a more expensive responsive action. Under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, Pub.L. No. 96–510 (codified as amended at 42 U.S.C.A. §§ 9601–9675) (West 1983 & Supp.1987), a party may at least challenge the selected response as being arbitrary or capricious. *See* 42 U.S.C.A. § 9613(j)(2) (West Supp. 1987). The Louisiana statute appears to offer defendants no such opportunity. *See* La.Rev.Stat.Ann. § 30:1149.46 (West Supp. 1988) ("Finding of liability by the court"); *id.* § 30:1147 (West Supp.1988) ("Defenses"). Thus, the need to be represented is acute at the time the demand letter is received.

The court notes also that the district court in *Detrex Chemical Industries* reconsidered its original decision. *See* 681 F.Supp. at 459–60 (N.D.Ohio 1988). On reconsideration, the court held that the insurer's duty to defend would be triggered by the government's issuance of a remedial order. *See id.* at 460. This court believes that such a position "shuts the barn door after the horses have gotten out." The adverse consequence to the insured occurs when the government chooses a remedial plan more expensive than an otherwise acceptable plan. Thus, the need for representation is greatest before the remedial plan is formulated, when the government is accepting input from the responsible parties. *See, e.g.,* Complaint Ex. B at 2–3 (Letter from Louisiana Department of Justice to Avondale Shipyards Inc. demanding that the company submit a remedial plan of its own, and inviting the company to participate in a meeting designed to "coordinate the submission of a plan").

The third case relied on by the Second Department, *City of Evart,* "held that the requirement of a suit was 'clear and unambiguous' and that the duty to defend extended only to 'suits, not allegations, accusations or mere claims which have not been embodied in a suit.'" *Technicon Elec. Corp.,* 533 N.Y.S.2d at 105. *City of Evart* may be authority within Michigan, *but see Fireman's Fund Ins. Co. v. Ex–Cell–O Corp.,* 662 F.Supp. 71, 75 (E.D.Mich.1987) (relying on another Michigan precedent, *United States Aviex Co. v. Travelers Ins. Co.,* 125 Mich.App. 579, 336 N.W.2d 838 (1983), to hold "that a 'suit' includes any

effort to impose on the policyholder a liability ultimately enforceable by a court"), but it is not binding in New York. Its precedential value is further eroded by its characterization of a demand letter as a "mere claim[ ]." As already stated, a recipient of a demand letter can be adversely affected by ignoring the letter. *See* discussion *supra* at 1321–22. Lastly, there is precedent in New York for interpreting the term "suit" flexibly.

The plaintiffs submit the case of *Clarke v. Fidelity & Casualty Co.*, 55 Misc.2d 327, 285 N.Y.S.2d 503 (Sup.Ct.1967), for the proposition that, under New York law, once an insured has received notice of the institution of "juridical process" that might eventually lead to a judgment, a "suit" requiring the insurer to defend has been stated. Plaintiffs point out that the Louisiana statute expressly provides that the secretary of DEQ may institute a lawsuit to compel recovery of costs from any liable parties. *See* La.Rev.Stat.Ann. § 30:1149.45(B) (West Supp.1988).

In *Clarke*, the insured was "vouched in" to a lawsuit. *See* 55 Misc.2d at 333–35, 285 N.Y.S.2d at 508–10. This process notified the insured that another party, involved in a lawsuit, would have the insured be bound by judgment in that lawsuit without actually impleading the insured, and for that reason, the other party was offering the insured the opportunity to control the defense of the litigation. *See id.*, 285 N.Y. S.2d at 508–10. The court stated that use of the vouching-in process would not make the insured "any the less proceeded against by way of the juridical process generically defined in the insurance contract as a 'suit.'" *See id.* at 336, 285 N.Y.S.2d at 510. The court concluded that the procedure constituted a "litigious process which is in fact a 'suit' within the meaning of the" insurance policy. *See id.*, 285 N.Y.S.2d at 510; *see also Continental Casualty Co. v. Cole*, 809 F.2d 891, 897–99 (D.C.Cir.1987) ("*Clarke* focused on the substance of the action against the insured rather than on its form, recognizing that an insured who is being 'proceeded against,' albeit in an unorthodox fashion, is no less entitled to a

defense than his insured contemporaries who are legally attacked in a more conventional manner.").

There is a distinction between *Clarke* and the process involved in this action. The vouching-in procedure used in *Clarke* sufficed to give a judgment obtained in a lawsuit binding effect against the insured. *See* 55 Misc.2d at 333–35, 285 N.Y.S.2d at 508–10. On the other hand, there was no pending judicial proceeding filed by the Louisiana DEQ against anyone at the time plaintiffs filed this declaratory judgment action. However, the plaintiffs had received a "demand letter" from the DEQ, requiring the submission of a remedial plan. *See* Complaint Ex. B.

The distinction is insignificant. The relevant statute authorizes the secretary to take remedial action before instituting suit, which he may then use to "recover[ ]" expenditures. *See* La.Rev.Stat.Ann. § 30:1149.45(C) (West Supp.1988). Thus, action may be undertaken which binds the insured before suit is filed. Since damages may be determined before the parties arrive in court, the administrative process is part of a "litigious process" that triggers the obligation to defend. *See New Castle County*, 673 F.Supp. at 1366 (demand letter "legally obligated" insured to incur cleanup costs); *Ex–Cell–O Corp.*, 662 F.Supp. at 75 (demand letter constituted "an effort to impose on the policyholders a liability ultimately enforceable by a court"). The promise to defend would be partially illusory if the insured were provided with a defense only as to liability, and not as to damages.

From the foregoing discussion, it should be clear that it is misleading to characterize a demand letter such as we have in this case as seeking "voluntary participation in remedial measures." *Technicon Elec. Corp.*, 533 N.Y.S.2d at 105. First, failure to respond can lead to adverse consequences. Second, the court has not found any authority holding that the governmental agency is bound to accept a recipient's volunteered plan. Thus, representation is

necessary to convince the government to accept one remedial plan rather than another. For all of the foregoing reasons, the court opines that the New York Court of Appeals would hold that receipt of a demand letter from a governmental environmental agency in such particular circumstances as we have in this case is a "suit" requiring the insurer to defend.

## C. Defendant's Other Objections

The defendant objects that it is not obligated to defend any proceeding against the plaintiffs unless and until coverage is found as a certainty, citing cases from New Jersey. *See Hartford Accident & Indemnity Co. v. Aetna Life & Casualty Ins. Co.*, 98 N.J. 18, 22–27, 483 A.2d 402, 405–08 (1984) (per curiam); *Burd v. Sussex Mutual Ins. Co.*, 56 N.J. 383, 387–96, 267 A.2d 7, 9–14 (1970). The New Jersey rule is that if the insurer disputes the obligation to indemnify, its obligation to defend is translated "into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay." *Burd*, 56 N.J. at 390, 267 A.2d at 10, *quoted in Hartford Accident & Indemnity Co.*, 98 N.J. at 23, 483 A.2d at 406. It is felt that this avoids placing the insurer's counsel in a conflict between insurer and insured. *See Hartford Accident & Indemnity Co.*, 98 N.J. at 25, 483 A.2d at 407; *Burd*, 56 N.J. at 388–92, 267 A.2d at 10–11.

This objection is not well-grounded. New York, while recognizing the concern of conflicted counsel, deals with the problem arising under such circumstances differently. "If any such conflict of interest arises, as it probably will, the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select." *Prashker v. United States Guarantee Co.*, 1 N.Y.2d 584, 593, 136 N.E.2d 871, 876, 154 N.Y.S.2d 910, 917 (1956); *see Utica Mutual Ins. Co. v. Cherry*, 45 A.D.2d 350, 355, 358 N.Y.S.2d 519,

524 (2d Dep't 1974) (noting that the problem recognized by *Burd* and other cases is disposed of in New York by the rule established in *Prashker*), *aff'd mem.*, 38 N.Y.2d 735, 343 N.E.2d 758, 381 N.Y.S.2d 40 (1975). Thus, in New York the obligation is to defend, even if the interests of insured and insurer conflict.

■ Lastly, the defendant argues that it is an excess insurer, and that other insurers are primary insurers for these actions. Thus, the defendant contends it is not obligated to provide the plaintiffs with a defense.

This objection is without merit. The CGL policies state that "if any insurer affording other insurance to the named insured[s] denies primary liability under its policy, [Travelers] will respond under this policy as though such other insurance were not available." *E.g.*, Ex. G to Affidavit of Robert P. Carroll, executed Oct. 28, 1987, at Condition 5. The third-party defendants, other insurers named by the defendant, have all denied primary liability. According to its contract, these denials obligate the defendant.

## CONCLUSION

The defendant is obligated to provide the plaintiffs a defense for both the private actions filed and the administrative process initiated by the Louisiana Department of Environmental Quality. Therefore, the plaintiffs' motion for partial summary judgment is granted in all respects.

SO ORDERED.